IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ALTHA CRAVEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:17CV1014 |
| | ) | |
| UNIVERSITY OF NORTH CAROLINA at | ) | |
| CHAPEL HILL; CAROL L. FOLT, *in her* | ) | |
| *official capacity as Chancellor*; KEVIN GUSKIEWICZ, | ) | |
| *individually and in his official capacity as Dean of the School* | ) | |
| *of Arts & Sciences*; MICHAEL EMCH, *individually* | ) | |
| *and in his official capacity as Chair of the Department of* | ) | |
| *Geography*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiff, Altha Cravey, initiated this action against the above-named Defendants, alleging sex discrimination and retaliation in violation of 42 U.S.C. § 2000e *et seq.* ("Title VII"), and constitutional violations pursuant to 42 U.S.C. § 1983 ("Section 1983"). (ECF Nos. 1, 14.) Before the Court are Defendants' Motion to Dismiss Amended Complaint in Part ("Partial Motion to Dismiss"), (ECF No. 17), and Plaintiff's Motion for Leave to File Amended Complaint ("Motion for Leave to Amend Complaint"), (ECF No. 19). For the reasons set forth below, Defendants' Partial Motion to Dismiss will be granted in part and denied in part, and Plaintiff's Motion for Leave to Amend Complaint will be granted.[1]

---

[1] Because the Court will grant Plaintiff's Motion for Leave to Amend Complaint, the Court's consideration of Defendants' Partial Motion to Dismiss will include an examination of both the Amended Complaint, (ECF No. 14), as well as the proposed Second Amended Complaint, attached as an exhibit to Plaintiff's motion, (ECF No. 19-1). The Court notes that in the briefing on

# I.    BACKGROUND

Plaintiff is a tenured female Associate Professor at Defendant, University of North Carolina at Chapel Hill ("UNC-CH").  (ECF No. 14 ¶¶ 9–10, 13; ECF No. 19-1 ¶¶ 9–10, 13.)  She received tenure in 2000.  (ECF No. 14 ¶ 13; ECF No. 19-1 ¶ 13.)  Plaintiff teaches in UNC-CH's Department of Geography and, according to the Complaint, she "is an internationally renowned scholar in the field of labor geography."  (ECF No. 14 ¶¶ 10, 11; ECF No. 19-1 ¶¶ 10, 11.)  Plaintiff has been employed at UNC-CH since July 1, 1994, and alleges that, over the course of her career at UNC-CH, she "has been a vocal advocate for the equal and fair treatment of women and minority faculty and students within the Geography Department and within the UNC system."  (ECF No. 14 ¶¶ 10, 16; ECF No. 19-1¶¶ 10, 16.)  Plaintiff has frequently spoken at public rallies and meetings, and has published op-ed articles and letters on issues about which she was concerned.  (*See* ECF No. 14 ¶¶ 17, 20, 24, 27–30; ECF No. 19-1 ¶¶ 17, 20, 24, 27–30.)  Plaintiff has also raised her concerns directly with UNC-CH officials and Department employees.  (ECF No. 14 ¶¶ 17, 23, 25; ECF No. 19-1 ¶¶ 17, 23, 25.)

In May 2015, Plaintiff applied for promotion to Full Professor.[2]  (ECF No. 14 ¶ 26; ECF No. 19-1 ¶ 26.)  At the time the decision was made regarding Plaintiff's promotion,

Defendants' Partial Motion to Dismiss, each party discussed the amendments included in the proposed Second Amended Complaint.  Further, Defendants assert in their response to Plaintiff's Motion for Leave to Amend Complaint that the proposed Second Amended Complaint, including its amendments, "do not undermine the bases for dismissal" set forth in their pending motion.  (ECF No. 23 at 2.)  Accordingly, references to "the Complaint" refers to both the Amended Complaint as well as the Second Amended Complaint.

[2] Plaintiff previously applied for promotion to Full Professor in 2005 and was denied the position.  (ECF No. 14 ¶ 14; ECF No. 19-1¶ 14.)

Defendant Kevin Guskiewicz ("Guskiewicz") "was serving as Acting Dean of the College of Arts & Sciences." (ECF No. 14 ¶ 32; ECF No. 19-1 ¶ 32.) Defendant Guskiewicz accepted the recommendation of the Geography Department and its Chair, Defendant Michael Emch, to deny Plaintiff's application for promotion. (ECF No. 14 ¶ 35; ECF No. 19-1 ¶ 35.) Plaintiff received notice of the denial of her application for promotion to Full Professor on December 14, 2015. (ECF No. 14 ¶ 31; ECF No. 19-1 ¶ 31.)

According to Plaintiff, male faculty members with similar or lesser credentials and experience "have consistently been promoted to Full Professor." (ECF No. 14 ¶ 37; ECF No. 19-1 ¶ 37.) In addition, during the three years prior to Plaintiff filing suit, she was assigned less Teaching Assistant ("TA") support than male faculty members with similar seniority, teaching loads, course sizes, and course laboratory requirements. (ECF No. 14 ¶¶ 43, 45; ECF No. 19-1 ¶¶ 43, 45.) Plaintiff further alleges that in the three years prior to filing suit, she "was not assigned to teach any graduate courses or seminars," thus reducing her opportunities for career growth and advancement. (ECF No. 14 ¶¶ 48–52; ECF No. 19-1 ¶¶ 48–52.)

On or about June 6, 2016, Plaintiff filed a Charge of Discrimination ("EEOC Charge") with the Equal Employment Opportunity Commission ("EEOC") alleging sex discrimination and retaliation. (ECF No. 14 ¶ 58; ECF No. 19-1 ¶ 59.) On or after August 10, 2017, Plaintiff received a "right to sue" letter from the EEOC. (ECF No. 14 ¶ 59; ECF No. 19-1 ¶ 60.) Plaintiff filed suit in this Court on November 7, 2017. (*See* ECF No. 1.)

Defendants move for partial dismissal of Plaintiff's Complaint with respect to: "(1) any claim based upon events outside the applicable statutes of limitation; (2) any claim based upon course or [TA] assignments; and (3) Plaintiff's claim[s] against Dean Kevin Guskiewicz."

(ECF No. 17 at 1.)  In addition, Plaintiff seeks leave to amend her Amended Complaint.  (ECF No. 19.)  The Court will, first, address Plaintiff's Motion for Leave to Amend Complaint.

## II.   PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT

Plaintiff requests leave to file a Second Amended Complaint "to clarify certain facts and the claims asserted."  (ECF No. 19 at ¶ 2.)  Defendants do not object to Plaintiff's motion. (ECF No. 23 at 2.)

The determination whether to grant or deny a motion to amend a pleading lies within the sound discretion of the district court.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Deasy v. Hill*, 833 F.2d 38, 40 (4th Cir. 1987).  Courts should freely grant leave to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a).  Thus, a request for "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) (citing *Foman*, 371 U.S. at 182).

The Court concludes that Plaintiff's proposed amendment would not be prejudicial for two reasons: no party contends that Plaintiff seeks leave to amend to raise new claims or proceed on a legal theory arising from facts unfamiliar to the Defendants; and this litigation has yet to advance beyond the motion-to-dismiss stage.  *See Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006) ("An amendment is not prejudicial . . . if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred.").  Further, the proposed amendment does not demonstrate bad faith.  *See GSS Props., Inc. v. Kendale Shopping Ctr., Inc.*, 119 F.R.D. 379, 381 (M.D.N.C. 1988) ("Bad faith amendments are those

which may be abusive or made in order to secure some ulterior tactical advantage.").  Finally, the proposed amendment is not clearly insufficient or frivolous on its face and thus, is not futile.  *See Johnson*, 785 F.2d at 510 ("Leave to amend . . . should only be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face.").  Accordingly, Plaintiff's Motion for Leave to Amend Complaint will be granted.

## III.    DEFENDANTS' PARTIAL MOTION TO DISMISS

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendants move for dismissal of: "(1) any claim based upon events outside the applicable statutes of limitation; (2) any claim based upon course or [TA] assignments; and (3) Plaintiff's claim[s] against Dean Kevin Guskiewicz."  (ECF No. 17 at 1.)

### A.  <u>Standards of Review</u>

#### 1.  *Rule 12(b)(1)*

Under Rule 12(b)(1), a party may seek dismissal based on the court's "lack of subject-matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  Subject matter jurisdiction is a threshold issue that relates to the court's power to hear a case and must be decided before a determination on the merits of the case.  *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 479–80 (4th Cir. 2005).  A motion under Rule 12(b)(1) raises the question of "whether [the plaintiff] has a right to be in the district court at all and whether the court has the power to hear and dispose of [the] claim."  *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012).  The burden of proving subject matter jurisdiction rests with the Plaintiff.  *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).  When evaluating a Rule 12(b)(1) motion to dismiss, the court should grant the motion "only if the material jurisdictional facts are not in dispute

and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

### 2. *Rule 12(b)(6)*

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "challenges the legal sufficiency of a complaint," including whether it meets the pleading standard of Rule 8(a)(2). *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), thereby "giv[ing] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A complaint may fail to state a claim upon which relief can be granted in two ways: first, by failing to state a valid legal cause of action, *i.e.*, a cognizable claim, *see Holloway*, 669 F.3d at 452; or second, by failing to allege sufficient facts to support a legal cause of action, *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).

### B. <u>Statute of Limitations</u>

Defendants first argue that any claim based upon events outside the applicable statute of limitations should be barred. (ECF No. 18 at 5–8.) Plaintiff argues, in response, that her claims are not time-barred, and further, the Court may consider historical background allegations which precede the limitations period. (ECF No. 21 at 6–8.) The Court finds merit in both parties' arguments.

Under Title VII, a party shall file an EEOC Charge within 180 days of the alleged discriminatory act. 42 U.S.C. § 2000e-5(e). The limitation period begins to accrue on the day the discriminatory act occurred. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). For Section 1983 claims, "[t]he statute of limitations . . . is borrowed from the applicable state's statute of limitations for personal-injury actions." *Tommy Davis Constr., Inc. v. Cape Fear Pub. Util. Auth.*, 807 F.3d 62, 66–67 (4th Cir. 2015). The applicable statute in North Carolina is N.C. Gen. Stat. § 1-52(5), which provides a three-year limitation period for personal injury actions. N.C. Gen. Stat. § 1-52(5); *Nat'l Advert. Co. v. City of Raleigh*, 947 F.2d 1158, 1161–62 (4th Cir. 1991). This limitation period begins to accrue "when the plaintiff has 'a complete and present cause of action'—in other words, when it could have 'file[d] suit and obtain[ed] relief.'" *Tommy Davis Constr., Inc.*, 807 F.3d at 67 (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (alterations in original)).

With respect to her Title VII and Section 1983 claims, Plaintiff alleges: (i) that she was denied promotion to Full Professor in December, 2015, (ECF No. 14 ¶¶ 31, 60, 68; ECF No. 19-1 ¶¶ 31, 61, 69); (ii) that since November, 2014, she was assigned TA's on only two occasions, which is fewer than her male counterparts, (ECF No. 14 ¶¶ 43, 60; ECF No. 19-1 ¶¶ 43, 61); and (iii) that since November, 2014, she "was not assigned to teach any graduate courses or seminars," (ECF No. 14 ¶ 50; ECF No. 19-1 ¶ 50). The Court finds that, as to the Title VII claims on which the above allegations are based, Plaintiff may seek recovery for discriminatory acts which occurred on or after December 9, 2015, or 180 days before the filing of Plaintiff's EEOC Charge on June 6, 2016. The Court further finds that, as to the Section 1983 claims, because Plaintiff filed this lawsuit on November 7, 2017, she may seek recovery

under Section 1983 for discriminatory acts which occurred on or after November 7, 2014, or three years before filing suit.

In addition, despite Defendants' argument that Plaintiff is precluded from basing her claims on historic events, allegations of prior acts of discrimination which occur outside the limitations period may constitute relevant background evidence in support of a timely claim. *See Morgan*, 536 U.S. at 113 (stating that Title VII does not "bar an employee from using . . . prior acts as background evidence in support of a timely claim"); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962–63 (4th Cir. 1996) ("Charges filed outside [the] time frame [allowed under Title VII] are barred, but a discriminatory allegation may still constitute relevant background evidence for valid claims . . . [and] might be admissible as evidence at trial to support [a] properly asserted sex discrimination claim.").

Thus, to the extent that the Complaint includes allegations outside the limitations period, such allegations may only be considered as historical support for Plaintiff's timely claims. The relevance of such allegations, however, will be determined later in the proceedings. Defendants' motion to dismiss based on the statute of limitations is, therefore, denied.

### C.  Claims based on Assignments of TA's and Graduate Courses

Defendants next argue for dismissal of Plaintiff's sex discrimination and retaliation claims based on TA and graduate course assignments on the basis that: (1) such assignments, or lack thereof, do not constitute adverse employment actions for discrimination or retaliation purposes; (2) Plaintiff has failed to allege "any facts to plausibly show that Defendant Emch provided any similarly situated males with more favorable assignments;" (3) Plaintiff has failed

to plausibly allege a First Amendment retaliation claim; and (4) "Plaintiff lacks standing to raise claims on behalf of others in the Department." (ECF No. 18 at 8–9.)

1. Whether Plaintiff has plausibly alleged adverse employment actions based on a lack of TA and graduate course assignments

In her Complaint, Plaintiff alleges that she "has been subjected to disparate treatment by Defendant UNC-CH because she is a woman," in violation of Title VII and the Equal Protection Clause of the Fourteenth Amendment. (ECF No. 14 ¶ 60, 63, 73; ECF No. 19-1 ¶ 61, 64, 74.) Title VII prohibits disparate treatment of employees based on their sex. 42 U.S.C. § 2000e-2(a)(1); *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). Similarly, the Equal Protection Clause[3] "confers a right to be free from gender discrimination that is not substantially related to important governmental objectives." *Beardsley v. Webb*, 30 F.3d 524, 529 (4th Cir. 1994) (citing *Davis v. Passman,* 442 U.S. 228, 234–35 (1979)).

In the absence of direct evidence of discrimination, to state a claim for disparate treatment claim based on sex, under both Title VII and Section 1983,[4] Plaintiff must allege that: "(1) she is a member of a protected class; (2) she has satisfactory job performance; (3) she was subjected to adverse employment action; and (4) similarly situated employees outside her class received more favorable treatment." *Prince-Garrison v. Md. Dep't of Health & Mental*

---

[3] Because Plaintiff alleges constitutional deprivations, those claims are brought under Section 1983, which provides a private right of action to persons whose constitutional rights have been violated by an official acting under the color of state law. *Hafer v. Melo*, 502 U.S. 21, 27 (1991).

[4] Courts apply the framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to discrimination claims under both Title VII and Section 1983. *See Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004); *Albright v. Charlotte-Mecklenburg Bd. of Educ.*, No. 3:17-cv-00461-FDW-DSC, 2017 WL 6028362, at *3 (W.D.N.C. Dec. 5, 2017).

*Hygiene*, 317 F. App'x 351, 353 (4th Cir. 2009). Defendants contend that Plaintiff has failed to satisfy the third and fourth elements of this claim.

### a. Sex Discrimination

Defendants argue that Plaintiff's sex discrimination claim fails because "the alleged lack of [TA] support and the alleged failure to assign Plaintiff her preferred courses do not constitute adverse employment action[s]." (ECF No. 18 at 10.) Plaintiff argues, in response, that "[t]he inequitable assignment" of TA's and graduate courses are adverse employment actions for the purposes of her Title VII and Section 1983 sex discrimination claims "because they result in reduced opportunities for career advancement and promotion." (ECF No. 21 at 10.)

"An adverse employment action is a discriminatory act which adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment." *James v. Booz–Allen & Hamilton, Inc.,* 368 F.3d 371, 375 (4th Cir. 2004) (internal quotation marks omitted). Typically, such an action includes "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion." *Boone v. Goldin,* 178 F.3d 253, 255 (4th Cir. 1999).

Here, Plaintiff has alleged that, because of her sex, she was assigned fewer TA's and denied "the same opportunities to teach graduate courses and seminars as afforded to similarly situated male faculty." (ECF No. 14 ¶ 60; ECF No. 19-1 ¶ 61.) Plaintiff has also alleged that such lack of assignments has reduced her opportunity for promotion and professional growth. (*See* ECF No. 14 ¶ 47; ECF No. 19-1 ¶ 47 (alleging that, as a result of receiving less TA support, "women professors have more arduous course workloads . . . [leaving] less time than men to

devote to the research and publication necessary for professional advancement, including promotion"); *see also* ECF No. 14 ¶ 54; ECF No. 19-1 ¶ 55 ("By having [fewer] opportunities to teach graduate courses and seminars, women professors have less interaction with graduate students over the years and [fewer] opportunities for professional development than their male colleagues.")). Accepting these allegations as true, which the Court must at this juncture, the Court concludes that Plaintiff has plausibly alleged that the lack of TA and graduate course assignments constitutes an adverse employment action with respect to her sex discrimination claims under Title VII and Section 1983. Accordingly, Defendants' motion to dismiss Plaintiff's sex discrimination claims on this basis will be denied.

### b. Retaliation

In the retaliation context, an adverse employment action is one where "a reasonable employee would have found the challenged action materially adverse." *Burlington N. & Santa Fe. Ry. Co. v. White*, 548 U.S. 53, 68 (2006). "[A]lthough adverse employment actions in the discrimination context must affect employment or alter the conditions of the workplace, a materially adverse action in the retaliation context need not impact conditions in the workplace to be actionable." *Hinton v. Va. Union Univ.*, 185 F. Supp. 3d 807, 826 (E.D. Va. 2016) (internal quotation marks omitted). Rather, a materially adverse action is one which results in a "tangible employment consequence," *Wells v. Gates*, 336 F. App'x 378, 383 (4th Cir. 2009), that "well might . . . dissuade[ ] a reasonable worker from making or supporting a charge of discrimination," *Burlington N.*, 548 U.S. at 68 (internal quotation marks omitted). This "materially adverse action" standard is, therefore, explicitly less restrictive than the "adverse employment action" standard for discrimination claims. *See id.* at 67.

In the Complaint, Plaintiff alleges that Defendants violated Title VII and the First Amendment when they assigned her less TA support and fewer graduate course assignments in retaliation for "complain[ing] about sexual and racial discrimination within the [Geography] Department." (ECF No. 14 ¶¶ 65–70, 79–106; ECF No. 19-1 ¶¶ 66–71, 80–89.) Plaintiff asserts that as a result of these alleged acts of retaliation, she has been afforded "[fewer] opportunities for professional development," and "less time . . . to devote to the research and publication necessary for professional advancement." (ECF No. 14 ¶¶ 47, 54; ECF No. 19-1 ¶¶ 47, 55.) Viewing these allegations in the light most favorable to Plaintiff, the Court finds that reduced opportunities for promotion and professional development caused by Defendants' alleged lack of assignments to Plaintiff is a "tangible employment consequence." *See Wells*, 336 F. App'x at 383. Such a consequence could dissuade a reasonable employee from making or supporting a charge of discrimination in the workplace. The Court, therefore, concludes that Plaintiff has sufficiently alleged a materially adverse employment action with respect to her Title VII and Section 1983 retaliation claims. Thus, the Court will deny Defendants' motion to dismiss Plaintiff's retaliation claims on this basis.

2.  Whether Plaintiff has plausibly alleged that similarly situated males received more favorable TA and graduate course assignments

Under the Equal Protection Clause of the Fourteenth Amendment, similarly situated persons must be treated alike. *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439 (1985). To state a claim under Section 1983 for a violation of the Equal Protection Clause, Plaintiff must "plead sufficient facts to 'demonstrate that [s]he has been treated differently from others with whom [s]he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.'" *Adams v. Trs. of the Univ. of N.C.-Wilmington*, 640

F.3d 550, 566 (4th Cir. 2011) (quoting *Williams v. Hansen*, 326 F.3d 569, 576 (4th Cir. 2003)).

Likewise, under Title VII, Plaintiff must plausibly allege that she was treated differently from

similarly situated employees outside the protected class. *Coleman v. Md. Ct. of App.*, 626 F.3d

187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012). While Plaintiff is not required to make an

evidentiary showing at the motion-to-dismiss stage, "[c]onclusory allegations of discrimination

. . . not supported by any reference to particular acts, practices, or policies" are insufficient to

state a claim of discrimination. *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847

(4th Cir. 1979).

Defendants contend that Plaintiff has failed to plausibly allege that she received less

favorable TA and graduate course assignments than similarly situated males. (ECF No. 18 at

12.) The Court disagrees.

In the Complaint, Plaintiff alleges the following:

> (i)     "During the last three years, [Plaintiff] was assigned [TA's]
>         only two times, for one class in 2015 and one class in
>         2017," (ECF No. 14 ¶ 43; ECF No. 19-1 ¶ 43);
>
> (ii)    "In contrast, male professors with similar seniority,
>         teaching loads, course sizes, and course laboratory
>         requirements as [Plaintiff] are frequently provided with
>         [TA's]. For example, in the last three years, Professor
>         Steve Birdsall had approximately seven [TA's] — two in
>         the fall of 2015, two in the fall of 2016, and three in the
>         fall of 2017. Associate Professor John Florin had at least
>         three [TA's] during this period — two in the fall of 2016
>         and one in the spring of 2017. Professor Scott Kirsch had
>         approximately five [TA's] during this period — two in the
>         spring of 2016, one in the fall of 2016, and two in the
>         spring of 2017," (ECF No. 19-1 ¶ 45; *see* ECF No. 14 ¶
>         45);
>
> (iii)   "[Plaintiff] is qualified to teach graduate courses and
>         seminars," (ECF No. 14 ¶ 49; ECF No. 19-1 ¶ 49);

(iv) &ldquo;Upon her hiring in 1994, [Plaintiff] was told that she would have the opportunity to teach at least one graduate seminar a year. . . . In the last three years, [Plaintiff] was not assigned to teach any graduate courses or seminars,&rdquo; (ECF No. 14 ¶ 50; ECF No. 19-1 ¶ 50);

(v) &ldquo;Male professors, however, are frequently assigned to teach graduate courses and seminars. For example, during the last three years, male professors John Pickles, Scott Kirsch, Steve Walsh, and Defendant Emch were each assigned to teach at least two graduate courses,&rdquo; (ECF No. 14 ¶ 53; ECF No. 19-1 ¶ 53); and

(vi) &ldquo;[Plaintiff] is equally qualified to teach graduate courses and seminars comparable to those taught by professors John Pickles, Scott Kirsch, Steve Walsh, and Defendant Emch,&rdquo; (ECF No. 19-1 ¶ 54).

Plaintiff further alleges that, as a result of the lack of TA's, female professors have &ldquo;more arduous course workloads . . . [and] less time than men to devote to the research and publication necessary for professional advancement, including promotion.&rdquo; (ECF No. 14 ¶ 47; ECF No. 19-1 ¶ 47.) Plaintiff also alleges that &ldquo;[b]y having [fewer] opportunities to teach graduate courses and seminars&rdquo; female professors have &ldquo;less interaction with graduate students . . . and [fewer] opportunities for professional development than their male colleagues.&rdquo; (ECF No. 14 ¶ 55; ECF No. 19-1 ¶ 55.)

Taking these allegations as true, and drawing all reasonable inferences in Plaintiff's favor, as required at this stage of litigation, the Court concludes that Plaintiff has plausibly alleged that, as compared to Plaintiff, similarly situated male professors received more favorable TA and graduate course assignments. Thus, Plaintiff's sex discrimination claims under Title VII and Section 1983 will not be dismissed on this basis.

### 3. Whether Plaintiff has plausibly alleged a First Amendment retaliation claim based on TA and graduate course assignments

Plaintiff alleges that the lack of TA and graduate course assignments was in retaliation for exercising her First Amendment free speech and free association rights.[5] (ECF No. 14 ¶¶ 79–106; ECF No. 19-1 ¶¶ 80–89.) To state a cognizable First Amendment retaliation claim under Section 1983, Plaintiff must allege that: "(1) she engaged in protected First Amendment activity, (2) the defendants took some action that adversely affected her First Amendment rights, and (3) there was a causal relationship between her protected activity and the defendants' conduct." *Constantine*, 411 F.3d at 499. Defendants argue that Plaintiff has failed to plausibly allege causation. (*See* ECF No. 18 at 14–15.) The Court disagrees.

In order to satisfy the causation element of a First Amendment retaliation claim, Plaintiff must allege sufficient facts to show that her protected First Amendment conduct was a substantial factor motivating the decision to assign her fewer TA's and graduate courses. *See Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337, 352 (4th Cir. 2000). Plaintiff must allege that the Defendants were aware of her engaging in protected expression, and also that there was "some degree of temporal proximity to suggest a causal connection" between Plaintiff's public criticisms of UNC-CH and the lack of TA and graduate course assignments. *Constantine*, 411 F.3d at 501.

Here, Plaintiff alleges that:

> (i)    she "has frequently exercised her right to free speech and free association by speaking publicly at rallies and meetings, by publishing op-ed articles and letters, and, at

---

[5] Plaintiff also bases her First Amendment retaliation claim on the denial of her application for promotion, (ECF No. 14 ¶ 102; ECF No. 19-1 ¶ 85), however, Defendants do not appear to challenge this basis for Plaintiff's First Amendment retaliation claim.

times, by bringing her concerns directly to officials of UNC-CH and Department employees," (ECF No. 14 ¶ 17; ECF No. 19-1 ¶ 17);

(ii)     Defendant Michael Emch is "responsible for determining faculty teaching course loads and assigning [TA's] to faculty," (ECF No. 14 ¶ 41; ECF No. 19-1 ¶ 41);

(iii)    in early November 2014 and throughout 2015, Plaintiff met with UNC-CH officials and "raised issues of sexual discrimination on the part of Defendant Emch, as well as the fact that all Full Professors were male and did not appear sympathetic to feminist-oriented research and scholarly work such as hers," (ECF No. 14 ¶ 23; ECF No. 19-1 ¶ 23);

(iv)    on several occasions during 2015, Plaintiff publicly criticized certain UNC-CH decisions via op-ed articles, public rallies, and public protests, (ECF No. 14 ¶ 24, 27–30; ECF No. 19-1 ¶ 24, 27–30);

(v)     "[d]uring the last three years, she was assigned [TA's] only two times, for one class in 2015 and one class in 2017," (ECF No. 14 ¶ 43; ECF No. 19-1 ¶ 43);

(vi)    "[i]n the last three years, [Plaintiff] was not assigned to teach any graduate courses or seminars," (ECF No. 14 ¶ 50; ECF No. 19-1 ¶ 50);

(vii)   "[b]ecause Plaintiff spoke out on . . . matters of public concern, Defendants developed animosity towards Plaintiff and engaged in actions, omissions, and decisions aimed at denying Plaintiff's employment rights and protections granted to her under law, including, but not limited to, . . . denying her the regular benefits and opportunities afforded to male professors, including graduate course and seminar teaching assignments and the support of [TA's]," (ECF No. 14 ¶ 102; ECF No. 19-1 ¶ 85); and

(viii)  "[s]uch actions, omissions, and decisions on the part of Defendants were taken in response to, and in retaliation for, Plaintiff's exercise of her [First Amendment rights

and] . . . to discourage Plaintiff and other employees from exercising their [First Amendment rights]," ((ECF No. 14 ¶ 103–04; ECF No. 19-1 ¶ 86–87).

The Court concludes that these allegations, taken as true and viewed in the light most favorable to Plaintiff, are sufficient to permit a reasonable inference that Plaintiffs' speech in November 2014 and throughout 2015 was a motivating factor behind Defendants' lack of TA and graduate course assignments to Plaintiff. Defendants' motion to dismiss Plaintiff's First Amendment retaliation claim under Section 1983 will, therefore, be denied.

4. Whether Plaintiff has standing to raise claims on behalf of others in the Geography Department

Defendants argue that Plaintiff "lacks standing to challenge" TA and graduate seminar assignments to other female instructors at UNC-CH which caused no injury to Plaintiff. (ECF No. 18 at 16.) Plaintiff argues, in response, that "[c]ontrary to Defendants' assertion, [she] has not attempted to raise any claims on behalf of others in the Department." (ECF No. 21 at 8.)

A plaintiff has standing to sue where she has: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). While Plaintiff's Complaint references the alleged treatment of other female faculty members within UNC-CH's Geography Department, (*See, e.g.,* ECF No. 14 ¶¶ 42, 44, 47, 48, 51, 52, 54; ECF No. 19-1 ¶¶ 42, 44, 47, 51, 52, 55), none of the claims asserted seek redress for injury to anyone other than Plaintiff. Specifically, with respect to each of Plaintiff's three claims, she alleges that, "[a]s a direct result of Defendants' illegal acts of discrimination [and retaliation] *against Plaintiff* . . . she has suffered substantial damages" and is entitled to appropriate relief under Title VII and Section 1983. (ECF No. 14 ¶¶ 64, 70, 77, 106; ECF No. 19-1 ¶¶ 65, 71, 78, 89 (emphasis

added).)  The Court, therefore, concludes that Plaintiff has alleged sufficient facts showing that she has standing to sue for injuries she suffered due to Defendants' allegedly unlawful conduct.  As such, to the extent Defendants seek dismissal of Plaintiff's Title VII and Section 1983 claims for lack of standing, the Court will deny Defendants' motion.

### D. Plaintiff's Section 1983 Claims against Defendant Guskiewicz

As previously stated, Section 1983 provides a private cause of action to individuals whose constitutional rights have been violated by a person acting under the color of state law. *Hafer v. Melo*, 502 U.S. 21, 27 (1991); 42 U.S.C. § 1983.  Here, Plaintiff alleges Section 1983 claims against Defendant Guskiewicz in his individual and official capacities.[6]  Specifically, Plaintiff asserts that her denial of promotion to Full Professor constituted sex discrimination, in violation of the Equal Protection Clause of the Fourteenth Amendment, and retaliation, in violation of the free speech and free association clauses of the First and Fourteenth Amendments.  (*See* ECF No. 14 ¶¶ 31–35, 71–106; ECF No. 19-1 ¶¶ 31–35, 72–89.)

In seeking dismissal of the Section 1983 individual capacity claims against Defendant Guskiewicz, Defendants argue that "Plaintiff has not plausibly alleged that Guskiewicz intentionally discriminated or retaliated against her by [accepting] the Department's recommendation [to deny Plaintiff's application for promotion]."  (ECF No. 18 at 17.)  As Defendants correctly state, in order to prevail in a Section 1983 personal capacity suit, Plaintiff must show that the defendant acted personally in the deprivation of her constitutional rights. *See Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) ("In order for an individual to be liable

---

[6] In December, 2015 when Plaintiff was denied promotion to Full Professor, Defendant Guskiewicz served as the Acting Dean of the College of Arts & Sciences.  (ECF No. 14 ¶ 32; ECF No. 19-1 ¶ 32.)

under [Section] 1983, it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." (internal quotation marks omitted)).  The defendant "must have had personal knowledge of and involvement in the alleged deprivation of [the plaintiff's] rights in order to be liable."  *Id.*

In the Complaint Plaintiff alleges: (i) that Defendant Guskiewicz served as the "Dean or Acting Dean of the College of Arts & Sciences" during the relevant time period, (ECF No. 14 ¶ 7; ECF No. 19-1 ¶ 7); (ii) that Defendant Guskiewicz managed the Department of Geography and was responsible for "making faculty promotion decisions," (ECF No. 14 ¶ 7; ECF No. 19-1 ¶ 7); and (iii) that Defendant Guskiewicz "accepted Defendant Emch and the Department's recommendation to deny [Plaintiff's] promotion application without engaging in any investigation to determine whether the recommendation was non-discriminatory," (ECF No. 14 ¶ 35; ECF No. 19-1 ¶ 35).

These allegations, construed in the light most favorable to Plaintiff, sufficiently allege that Defendant Guskiewicz was personally involved in the alleged deprivation of Plaintiff's constitutional rights.  *See Collin v. Rector & Bd. of Visitors of the Univ. of Va.*, 873 F. Supp. 1008, 1018 (W.D. Va. 1995) (denying motion to dismiss § 1983 personal capacity claims where "[t]he complaint alleges a specific act of discrimination, centering around [plaintiff's] denial of tenure, and alleges that the . . . individual-capacity [d]efendants . . . each participated in the alleged constitutional deprivation").  As a result, Defendants' motion to dismiss Plaintiff's Section 1983 claims against Defendant Guskiewicz, in his personal capacity, will be denied.

Defendants next argue that the official capacity claims against Defendant Guskiewicz "should be dismissed as duplicative of the claim[s] against Chancellor Folt."  (ECF No. 18 at

18.).  A suit against an official in his official capacity is "to be treated as a suit against the entity" of which an officer is an agent; "the real party in interest is the entity." *Kentucky v. Graham,* 473 U.S. 159, 165–66 (1985).  Thus, individuals sued in their official capacities "stand in the shoes of the entity they represent." *Swartz Ambulance Serv., Inc. v. Genesee Cty.*, 666 F. Supp. 2d 721, 726 (E.D. Mich. 2009).

Here, Plaintiff alleges the same Section 1983 official capacity claims against Defendant Guskiewicz[7] as those alleged against Defendant Folt[8].  (*See* ECF No. 14 ¶¶ 72–106; ECF No. 19-1 ¶¶ 73–89.)  Plaintiff's Section 1983 official capacity claims against Chancellor Folt are, therefore, claims against the entity of which Folt is an agent—UNC-CH.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (explaining that a claim against a "state official in his or her official capacity . . . is a suit against the official's office[,] [and] is no different from a suit against the State itself." (citation omitted)).  Likewise, Plaintiff's Section 1983 claims against Defendant Guskiewicz, in his official capacity, are also claims against UNC-CH.  Thus, such claims are duplicative and will be dismissed.  Accordingly, the Court will grant Defendants' motion to dismiss Plaintiff's Section 1983 claims against Defendant Guskiewicz, in his official capacity, as duplicative of the Section 1983 official capacity claims asserted against Defendant Folt.  *See Duplechain v. Neustrom*, No. 15-02433, 2017 WL 2656196, at *6 (W.D. La. May 2, 2017) (finding that the plaintiff's Section 1983 claims against the director of a correctional

---

[7] Although Plaintiff also asserts Section 1983 claims against Michael Emch, Chair of the Geography Department, Defendants do not argue for dismissal of these claims.

[8] According to the Complaint, Defendant Folt has served as UNC-CH Chancellor from approximately July 1, 2013 to present, and "[a]s part of her duties, [Folt] oversees and manages the . . . Department of Geography, including making final faculty promotion decisions."  (ECF No. 14 ¶ 6; ECF No. 19-1 ¶ 6.)

facility in his official capacity "are duplicative of the claims asserted against [the Sheriff] and should therefore be dismissed"), *adopted by* 2017 WL 2625412 (W.D. La. June 16, 2017).

## IV.    CONCLUSION

Based on the above, the Court concludes that Plaintiff's proposed Second Amended Complaint is not prejudicial, does not demonstrate bad faith, and does not appear futile.  The Court will, therefore, grant Plaintiff's Motion for Leave to Amend Complaint, and Plaintiff shall file the Second Amended Complaint within 10 days of the entry of this Order.

The Court also concludes that each of Plaintiff's claims survive, with the exception of Plaintiff's Section 1983 claims against Defendant Guskiewicz in his official capacity because, as discussed above, such claims are duplicative of the official capacity claims asserted against Defendant Folt.

For the reasons stated herein, the Court enters the following:

**ORDER**

IT IS THEREFORE ORDERED that Defendants' Partial Motion to Dismiss, (ECF No. 17), is GRANTED IN PART and DENIED IN PART.  The motion is GRANTED as to Plaintiff's Section 1983 claims against Defendant Kevin Guskiewicz in his official capacity. The motion is DENIED as to all other claims asserted by Plaintiff against Defendants.

IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to Amend Complaint, (ECF No. 19), is GRANTED and Plaintiff is instructed to file the Second Amended Complaint within 10 days of the entry of this Order.

This, the 18th day of September, 2018.

/s/ Loretta C. Biggs
United States District Judge